JAMES C. CHURCHILL *vs.* HENRY RICKER.

At the trial of an action which raised an issue of the defendant's negligence, and in which the plaintiff filed interrogatories to him, if the plaintiff reads some of the interrogatories and answers which relate to that issue, the defendant is entitled under the Gen. Sts. *c.* 129, §§ 51, 74, to have all his answers touching the issue read, although they do not relate to the particular facts inquired of in the interrogatories read by the plaintiff.

TORT. The declaration alleged that the defendant occupied a shop on Tremont Row in Boston ; that in the sidewalk, in front of the shop, was a coal-hole opening into the cellar of the shop ; that it was the duty of the defendant to keep this coal-hole covered ; but that he negligently allowed it to remain open ; and that the plaintiff, while walking with due care, fell into it and was injured. The answer denied all the allegations of the declaration, and alleged that, if the plaintiff was injured, it was by reason of his own negligence. The plaintiff filed interrogatories

to the defendant, of which the only material ones, with the answers thereto, were as follows :

1. "'Were you, in December 1869, occupying the premises No. 20 Tremont Row in Boston ; and if so, in what way, and whether exclusively of any other person ? " *Answer.* " I was, exclusively, as a dry goods store."

2. " Was there a coal-hole or scuttle in front of said premises, and if so, did you have control of the same ; was it connected with and a part of the premises occupied by you ; and did you use the same, and if so, for what purpose ? " *Answer.* " There was a coal-hole in front of my said premises, which I used for putting in coal, and had no other use or control of it. It was in the sidewalk and opened into the coal-bin of said premises."

3. " Was said hole open on or about December 8, 1869 ; if so, state how it became so ; at what hour of the day ; how long it remained open ; and for what purpose or reason it remained open ? " *Answer.* " It was. The scuttle cover was broken in cutting off the ice which had accumulated upon the sidewalk. This was about half past three o'clock in the afternoon, and it remained uncovered the time it occupied to procure another cover to cover it, which was, I think, from an hour to an hour and a half. I sent a messenger, directly after the cover was broken, to the place on Devonshire Street where such scuttles were manufactured, for another, but the messenger finding, as he informed me, that the manufacturers had removed from Devonshire Street, considerable time was spent by him in finding the place to which they had removed, which was on Albany Street, as I was informed afterwards. He found the place, and procured another scuttle, as soon as he could, as he informed me and I believed, which was placed upon the hole as soon as obtained."

4. " While it thus remained open, did you use any means to guard the same or cover it in part ; did you station any one there to point travellers to it, or to caution them against stepping into it ? If you say you did, state fully and particularly all that was done by you ; if you employed any one else ; whom ; and what did he do to your knowledge ; how long did he remain there, and how long, if you know, was it wholly unprotected ? " *An-*

*swer.* " While the scuttle remained without a cover, I stationed a boy there to guard it and notify all persons passing that it was open and to avoid the danger from.it; the boy, by my direction, held a shovel over the hole by placing the blade of the shovel one side of the hole on the sidewalk, near to it, and holding the top of the handle in one hand against himself, standing on the other side of the hole with the shovel thus inclined over and covering it, while he told those approaching of the hole being open, and also motioned to them with his hand to keep away from it. The hole was thus guarded, and those passing thus notified and warned thereof. The boy continued to guard the hole until it was taken charge of by the police, and directly thereafter the new cover came and was put on, so that the hole was at no time left open and unguarded."

At the trial in the superior court, before *Putnam,* J., the plaintiff read the first three interrogatories and the answers thereto, and stopped ; the defendant then insisted upon the reading of the fourth interrogatory and its answer ; and the judge, against the plaintiff's objection, ruled that they should be read.

The jury returned a verdict for the defendant, and the plaintiff alleged exceptions.

*G. A. Somerby & N. B. Bryant,* for the plaintiff.

*T. L. Wakefield,* for the defendant.

GRAY, J. The practice act provides that when one party to an action files interrogatories, to be answered on oath by the adverse party, for the discovery of material facts and documents, " the party interrogated may introduce into his answer any matter relevant to the issue to which the interrogatory relates," and " may require that the whole of the answers upon any one subject matter inquired of shall be read, if a part of them is read." Gen. Sts. *c.* 129, §§ 51, 74. The " issue " and " subject matter " thus described is not the particular fact covered by any one or more interrogatories, but the matter put in issue by the pleadings and thus inquired of. *Baxter* v. *Massasoit Insurance Co.* 13 Allen, 320. *Williams* v. *Cheney,* 3 Gray, 215, 220. One subject matter, put in issue by the pleadings in this case, was whether the defendant was or was not negligent in leaving open and un

guarded the hole in the sidewalk into which the plaintiff fell, and it was to this issue and subject matter that the answer to the fourth interrogatory, as well as those to the first three, related.

*Exceptions overruled.*